Good morning, Your Honors. My name is Byron Lynch. I represent Summit Development Corporation, the appellate in this case. I'm not going to spend any time with respect to the recent California Court of Appeals Boar's case. I believe that needs to be addressed primarily by the appellee that seems to illustrate much of his argument. I have felt since the beginning that the threshold issue in this case is one of subject matter jurisdiction. Subject matter jurisdiction is presumed to not exist, and the burden of proof rests on the party who is urging subject matter jurisdiction, in this case the appellee. Federal courts, including bankruptcy courts, are courts of limited jurisdiction. They only have subject matter jurisdiction under those matters that are assigned to them by Congress or appellees. What makes this jurisdiction? There's no doubt that the bankruptcy court has authority over a bankrupt estate. The issue here is whether there was authority to put the estate into bankruptcy, but the court's jurisdiction isn't in question, is it? I believe it is, Your Honor, because that jurisdiction, that is the bankruptcy court's jurisdiction in the Mastro case, rests on... That conflates merits, doesn't it? I mean, every case you could argue, well, plaintiff doesn't have an actual viable claim, so the court shouldn't have jurisdiction over this lawsuit because plaintiff doesn't have a good case. Or, you know, he actually can't file bankruptcy because he doesn't meet the criteria, therefore there's no subject matter jurisdiction because he shouldn't be in bankruptcy court. We're always back, this is personal at best, isn't it? Your Honor, I just disagree. Okay. Let me assume for a moment that I'm a Chapter 11 debtor in possession, and one of you all own a small corporation, wholly own it, and I decide to list that corporation as one of my assets. Is that going to somehow grant subject matter jurisdiction to the bankruptcy court? Why not? It goes to the validity of the allegation, but if they allege that, in fact, it is one of the assets, why doesn't the court have jurisdiction to adjudicate that? Because under 11 U.S., excuse me, under 28 U.S.C. 1334E, the jurisdiction of the bankruptcy court extends to property of the debtor. It doesn't extend to property that's owned by somebody else. And the property is alleged to be of the debtor, so the court has jurisdiction over it. It's an allegation that puts it into the subject matter, which is debtor's property before the bankruptcy court. Now, whether it is or isn't, what if you list 29 assets on your statement and 28 of them didn't even exist ever? Does that mean there's not jurisdiction? I believe so, under 1334E, because... And could you, would you tell us what you think is the best case to support that approach? I don't understand the question. I'm sorry. What's the best Ninth Circuit or any case that would support your approach, so we can go back and take a look at that?  I'd have to refer to my brief, Your Honor. I did put it in there, in the opening brief. Well, it would be helpful if that's, since you told us that's the key issue... My recollection is... You keep referring to the statute, but that statute really is no different than most other jurisdictional statutes that we deal with outside of the bankruptcy. The case that I cited was the Inouye Crime-Free Inc. at 196BR-116. Inouye Brown, 113BR-318. And Inouye Swain, 437BR-549. Do you have any circuit or other case that takes your position? Well, those are the cases I cited, Judge. I'm sorry. Okay. There may well be others, but those are the ones I relied on. It is, however, the appellee's burden of proof. It's not my burden of proof to come forth with factual evidence showing there is subject matter jurisdiction. Your client filed a proof of claim in the action. Is that correct? That's correct, Your Honor. And the proof of claim said nothing about asserting ownership of the corporation, instead filed a claim against the corporation. You know, Your Honor, our claim... Is that true? I can't answer that yes or no. I'm sorry. The answer to that is it was a wobbler, because at the time we were under some time pressure to file the claim. It was early. We had a notice from the court that if we were going to file it timely, we had to file it then. So we filed a wobbler claim saying, look, we haven't investigated all the facts on this. We don't know all the story. And that was the nature of our claim. But, yes, we did file a claim. However, there was a disclaimer in the claim, hopefully giving us the right to file it or amend it at a later date. Well, it seems to me if you file a claim against a debtor's estate, that's kind of worlds apart from saying, well, by the way, we own the debtor. I agree, Your Honor. That's why we filed the wobbler. Because we simply weren't sure at the time. You know, this was an ongoing relationship. Either your client owns the debtor or he doesn't. I mean, I don't understand this notion of wobbler. Wobbler means something to us in the context of California law where something can be a felony or a misdemeanor. I've got to say I've never heard of a wobbler that says, well, either we own the debtor or maybe the debtor owes us money. I mean, is there a form or a reference to that effect? Your Honor, the answer to that question is we really didn't know what we had at the time we filed it. And that was why we did it that way. I'm sorry. When did you know? Well, we found out we thought that was the case even before we filed the claim. But we weren't absolutely sure whether there had been a valid sale or not. And we later discovered there was. I don't know the exact date, but it would have been, you know, our indications were relatively early on. We advised the trustee of that relatively early on in April of 2010. I think it would be helpful for you to also address the California case because I don't think they answered the question completely, particularly in this regard. Even if those are California cases in terms of what a California court might do procedurally, we have Rule 60B, which is a federal rule of civil procedure. And we look at the court's invocation of that rule for abuse of discretion. And when I asked you when you did find out all of this, of course, your motion for reconsideration wasn't until after the final decision of the court, correct? The mandate had not yet been issued. Well, the mandate hadn't been issued. But how long was it between the time you had this information and you brought it to the attention of the court? Very short order, Your Honor. My client simply made a mistake. That was the bottom line. Well, but made a mistake. In other words, he was mixing up corporations. Correct. But when did he start mixing up? I mean, isn't the burden on him to figure out what corporation I'm filing a piece of paper on behalf of or that somebody is making an allegation on behalf of? Absolutely, Your Honor. The burden is on him. However, the penalty for failing to do that properly is that he cannot proceed, that is the corporation, Summit Development Corporation, cannot proceed while he is suspended. However, once the correct corporation has been properly revived, it is reinstated, postdated, if you will, as I understand it, for all purposes. So, yes, the burden is on him. But the question is whether you're going to penalize him and in what manner. Well, we're not penalizing anyone. It's a question of what happened in the bankruptcy court. And, of course, then it went to the BAP, which said there wasn't an abuse of discretion. Why is it an abuse of discretion? Because under California law, which is binding on BAP at that time, the law was even prior to the latest case, but by all the other cases that we had before us prior to the latest case, the law was to the effect that once you revive it, you reinstate the corporation and there's no penalty in terms of a dismissal or anything else going backwards for it. You're reinstated, knuckle-hump, so to speak. One of the things the BAP said you might want to respond to, as they said, the trustees spelled out the differences between the two entities in both the 2011 reply and the bankruptcy court and the February 2012 motion to dismiss. But no action was taken on the part of your client in response to those notices, right? That's correct, Your Honor. There were actually three corporations in play at various times, two of them which were named Summit Development Corporation. My client understood that the proper corporation had, in fact, or was in good standing. He was simply mistaken. There's just no way around that. Okay. Do you want to save your remaining minute for rebuttal? I do. Thank you, Your Honor. May it please the Court. Scott Henry representing James Riggi, the trustee. Your Honors, I think the Court already has this case figured out. There was no error of California law in this case in connection with the BAP's dismissal. California courts appear to be somewhat more lenient, don't they? You know, Your Honor, I think they do. Is that a problem? It isn't a problem in this case because, as Judge McCown has already observed, what the issue is here is really an issue of the Court's discretion on a motion for reconsideration. There was no error of California law because there was no request to reinstate the corporation. There was not any motion for a continuance to reinstate the corporation. What happened is they continued to deny, attempting, in effect, to pass off the wrong corporation as the corporation in interest. And only after it was dismissed by the BAP, properly so, applying California law, was there this effort to reinstate. Once we were at that point under Rule 60, the issue is whether the BAP had discretion to accept the relatively weak excuses that were offered. There's really no dispute. Even the appellant admits that it is a discretionary standard. So the issue really becomes is, under Rule 60, under these facts, did the BAP have discretion to deny a motion for reconsideration? The case was already dismissed. Well, one thing is that Rule 60B does allow for a mistake, which Mr. Lynch alluded to, that his client was simply mistaken. Well, I assume that the BAP had the power and the discretion to decide whether the excuses offered for the alleged mistake were sufficient excuses. And apparently their determination and their discretion was that they were insufficient excuses. Discretion in the legal context doesn't simply mean how I feel that day. Would a California court exercise discretion in the same fashion? Well, the truth is we don't know, because no California court has ever confronted the specific facts here. Here you have, I want to call it a corporation, but a corporation attempting to pass itself off as another corporation in the court below, repeatedly ignoring over more than seven weeks the notion that it needs to revive. Only addressing the issue after submitting it on the facts to the court that it was, in fact, the actual corporation. Completely contrary to the facts, of course. And does the BAP at that point have to revive after having dismissed the case? I submit that no California case, no California court would hold under these facts that there was an absolute right as a matter of law to reinstate a corporation that has already had its appeal dismissed. There is some point where you lose the right to absolutely. So you would distinguish those California cases because you hadn't, it really hadn't gone completely to the end of the line. In those cases, the corporation accepted the proposition, in each case, that it truly did need to revive, and it then took steps or asked for a continuance if that was necessary to gain the revival before the case was over. In this case, they insisted to the contrary that they did have the right corporation, that revival wasn't necessary. It went to the court. They lost that issue, clearly and unequivocally, and now say, whoa, we made a mistake. At that point, the BAP does have discretion to say, too far, too weak of an excuse. If there is a thing such as discretion in this case, it applied in favor of the BAP's decision and should be upheld. He characterizes this as a wobbler. Would you characterize discretion as a wobbler if it could go either way, that you haven't abused your discretion? Well, my own personal view, if that's what you're asking. Well, I'm asking under the law. Well, I think that what we have in this case is we have a corporate shale game. In fact, there's a series of corporate shale games going on here. I don't know why they created three similarly sounding corporations, why they didn't revive the corporation that was the real corporation in interest, why instead they formed a new corporation that had a similar sounding name and then argued that it was the same corporation attempting to pass it off. But very strange facts here. And I think under these circumstances and these facts, even a California court would say enough is enough. But let's assume we do get to the substantive issue in the case. And I would very much like the court to do so. And that is, and the court's already addressed this issue, is this really a case about subject matter jurisdiction or is it really a case about the trustee's capacity to bring the case in the first place? Clearly, all the courts that have looked at this, including the Fourth Circuit, have concluded that this is a situation, no matter how you characterize it, where there's a potential for waiver or estoppel or ratification. This is not a situation where it's not a bankruptcy case or it's not a bankruptcy issue. The court clearly has subject matter jurisdiction here. The question is, was the case properly commenced? Since the bankruptcy court didn't really address ratification, is that something we would address on appeal? If we were to get there, is that really appropriate more for the trial court? Well, I think that the concepts of estoppel, waiver, latches, ratification on these facts, all essentially encompass the same concept. And that is that you can't, in the face of a bankruptcy of your corporation, proceed to act like a creditor of the corporation, file a proof of claim, let the trustee litigate an entire adversary action to completion, quieting title to property in the name of the corporation, oppose motions for relief from stay by judgment creditors against the property, and then wait until the trustee actually sells the property for a million dollars more than you yourself are willing to pay for it, and then suddenly rise up and say, oh, hold everything, stop the clock. We actually own the corporation and this is all over and we're done. Under those circumstances, whatever you call it, it's too late to unravel 14 months of bankruptcy proceedings. Call it estoppel, ratification, what will you? It is not a question of subject matter jurisdiction that cannot be waived. The Fourth Circuit actually addresses the issue as a subject matter jurisdiction issue and comes to the conclusion under the facts of that case, which frankly were not as nearly as egregious as this, that the situation was ratified or they had acknowledged taking advantage of the acts of the corporation and could not deny them. The same result, I submit, applies here. Now, as a matter of judicial efficiency, the court could resolve this at the level of the BAP, acknowledging that the court did have discretion under these facts and that would be the end of this appeal. But it would not necessarily be the end of claims or questions about subject matter jurisdiction. At the very least, the BAP, if they do remand, they should do it with instructions that in fact this issue is an issue of capacity to sue and not subject matter jurisdiction. The reason that this case is characterized as an issue of subject matter jurisdiction is simply an attempt to make extortionate demands on the trustee in this case to basically bollocks up the transactions that need to be taken, the sales that need to be closed in order to properly administer this case. They have successfully, by arguing subject matter jurisdiction, entered into an area where the law in the Ninth Circuit is uncertain and where title companies, frankly, are unwilling to close transactions. There's two ways to solve the problem in this case. One, make it clear that this is a case about capacity and that the applicable law is that it can be waived under these circumstances. I think the case is right for review. The court should decide that now. But if, in fact, there's some kind of remand, there should be some clarification of what the issue is so that we're not dealing with a claimed subject matter jurisdiction. Lastly, it wouldn't be the worst thing for this court to take the opportunity to clarify the law. The 363M mutinous issue, unresolved in this circuit, is a huge problem in every bankruptcy case where subject matter jurisdiction is raised. All the other circuits that have addressed the issue have concluded that 363M statutory mutinous, if there's a colorable claim to jurisdiction, statutory mutinous applies. In this circuit, it's an open issue, and it's a problem for the administration of many, many cases. Thank you so much. Thank you. You have about a minute for rebuttal. It won't take much longer than that, Your Honor, if that much. Your Honors, why, what possible reason would Summit Development Corporation have for making a mistake, and Mr. Henry would imply that it was an intentional mistake? I mean, there's just absolutely no reason. It's in Summit's interest to do this correctly. It just failed to do it out of respect. Let's say we agreed with you. What about ratification of capacity? Here's my problem with that, Your Honor. I don't question that the Court has the right to enter into estoppel with respect to personam jurisdiction. I mean, that's true. The problem is the facts don't support it. We notified. First of all, this case was filed against FRB without the authority of the Board of Directors, without notice to the Board of Directors, without service to Summit. How does that speak to estoppel? I mean, there's no doubt that your client was aware. That's right, Your Honor. A proof of claim was filed. But it became aware of it. And a letter was sent within a couple of weeks to the trustee. Actually, about 53 days, Your Honor. It became aware of that on its own motion, on its own merits. Okay. So it did become aware of it, not because it was notified by anybody, but then it sent a letter notifying the trustee of the nature of the dispute, that it was uncertain what our rights were. But the trustee knew about it 53 days after the case was filed. I don't know exactly when Summit found out about it, but it was certainly sometime after that. So within a relatively short time, the trustee was notified of all the interest we had. Now, the trustee continued to administer the case. The interest you had that you didn't know what it was? That interest? Well, we said we didn't know what it was, but we clearly implied that we claimed ownership in that letter. Okay. Thank you. I'm sure that's true. All right. Thank you. I appreciate the arguments. The case just argued. FRB and Summit is submitted. Thank you, gentlemen. Thank you so much.
judges: Hawkins, McKeown, Clifton